**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2898-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LOUIS VEIRA, a/k/a FRANK SEENHOUSEN, WEEF PADRINO, and LUIS ANTONIA VIERA,

     Defendant-Appellant.

_____

Submitted March 7, 2019 – Decided June 14, 2019

Before Judges Whipple and Firko.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-05-1285.

Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Patrick D. Isbill, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Louis Veira appeals from a February 2, 2018 judgment of conviction. For the following reasons, we affirm.

On December 2, 2016, Diane Ortiz was working as an assistant store manager at a Home Depot in Lawnside. Another employee told Ortiz that he suspected a man and two women with a child in a shopping cart were shoplifting from the store. Ortiz approached the two women in the garden center and asked co-defendant Melissa Rivera and the other woman if they needed help with anything. They said they did not.

Ortiz heard rustling coming from behind an area of shelving in the garden center. Ortiz saw defendant kneeling between a shelving unit and a fence separating the store's exterior. Defendant had multiple boxes of tools. Ortiz asked defendant if he needed help, but he said he was waiting for a friend. When Ortiz observed the tools, defendant said he put them there because he did not want anyone else to buy them. Ortiz asked defendant to come out from behind the shelving, but he did not move until Ortiz took out her cell phone, at which point defendant became angry, approached Ortiz and demanded her phone. Ortiz refused and defendant grabbed Ortiz and began to choke her using his arm. Ortiz screamed for help and gasped for air until she lost consciousness. Ortiz

remembered waking up on the ground, that her throat hurt and her phone was missing. She went to the garden center register and called for help.

On May 3, 2017, defendant was indicted for first-degree robbery N.J.S.A. 2C:15-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); fourth-degree conspiracy to commit shoplifting, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:20-11(b)(1); and fourth-degree shoplifting, N.J.S.A. 2C:20-11(b)(1). Co-defendant Rivera was charged with one count of fourth-degree shoplifting, N.J.S.A. 2C:20-11(b)(1); and conspiracy to commit the same, N.J.S.A. 2C:5-2(a)(1).

Defendant and co-defendant Rivera were tried before a jury on various days in December 2017. At trial, the State introduced surveillance video that showed defendant and Rivera load tools into a shopping cart and showed defendant exit the store through the garden center shortly after the attack. During the trial, the State also introduced text messages between defendant and Rivera wherein defendant attempted to discourage Rivera from changing her story or going to the police and threatened to implicate her if she cooperated. The court allowed the jury to see the text messages because there was independent evidence of a conspiracy based on defendant's and Rivera's actions in the store. Defendant was convicted of second-degree robbery, simple assault,

3

and shoplifting but acquitted of conspiracy to shoplift. Rivera was acquitted of all charges. The judge sentenced defendant to an aggregate seventeen-year extended term in prison with eighty-five percent parole ineligibility, N.J.S.A. 2C:43-7.2. This appeal followed.

On appeal, defendant raises the following arguments:

POINT [I]

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE TEXT MESSAGES FROM CO-DEFENDANT RIVERA BECAUSE THE PROSECUTION FAILED TO ESTABLISH EACH OF THE REQUIRED ELEMENTS OF THE CO-CONSPIRATOR EXCEPTION TO THE HEARSAY RULE; THE ADMISSION OF RIVERA'S TEXT MESSAGES AS EVIDENCE AGAINST MR. VEIRA VIOLATED DEFENDANT VEIRA'S DUE PROCESS AND CONFRONTATION RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS.

POINT [II]

THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT SEVERING THE TRIALS OF THE DEFENDANTS. (Not raised below)

POINT [III]

DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

We begin by recognizing the deferential standard of review we apply when we review a trial court's evidentiary rulings. State v. Morton, 155 N.J. 383, 453 (1998); State v. McDougald, 120 N.J. 523, 577-78 (1990). We only reverse when the trial court abuses its discretion. State v. Nelson, 173 N.J. 417, 470 (2002); State v. Feaster, 156 N.J. 1, 82 (1998). If, in response to an objection, the trial court did not properly analyze the evidence under the applicable rules of admissibility, our review is plenary. State v. Lykes, 192 N.J. 519, 534 (2007).

Defendant argues the trial court admitted the text messages between defendant and Rivera as a statement of a co-conspirator without independent proof of concerted actions to support a conspiracy claim. Rule 803(b)(5) permits a co-conspirator's statement to be admitted against all the other members of the conspiracy where the "statement [was] made at the time the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan[.]"

> To qualify for admissibility under the rule, the State must meet the following conditions: (1) the statement must have been made in furtherance of the conspiracy; (2) the statement must have been made during the course of the conspiracy; and (3) there must be

"evidence, independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it."

[State v. Savage, 172 N.J. 374, 402 (2002) (quoting State v. Phelps, 96 N.J. 500, 509-10 (1984)).]

"[T]he trial court must determine whether there is independent evidence 'substantial enough to engender a strong belief in the existence of the conspiracy and of [the] defendant's participation.'" Id. at 403 (alteration in original) (quoting Phelps, 96 N.J. at 519). "[T]he prosecution [must] demonstrate[] by a fair preponderance of evidence that the conspiracy existed and that the defendant participated in it." Phelps, 96 N.J. at 518. "Thus, if the hearsay evidence is corroborated with sufficient independent evidence that engenders a strong sense of its inherent trustworthiness, it is admissible under the co-conspirator exception." Savage, 172 N.J. at 403.

A "conspiracy continues until the object of the conspiracy is fulfilled[.]" State v. Cherry, 289 N.J. Super. 503, 523 (App. Div. 1995). "[A] conspiracy may continue beyond the actual commission of the object of the conspiracy if it is shown that a conspirator enlisted false alibi witnesses, concealed weapons, or fled in order to avoid apprehension." Savage, 172 N.J. at 403.

[S]tatements relating to past events may be admissible if they are "in furtherance" of the conspiracy and "serve some current purpose, such as to provide cohesiveness, provide reassurance to a co-conspirator, or prompt one

6

> not a member of the conspiracy to respond in a way that furthers the goals of the conspiracy."
>
> [Ibid. (quoting State v. Taccetta, 301 N.J. Super. 227, 253 (App. Div. 1997)).]

Here, the text exchange between defendant and Rivera reflected an attempt on defendant's part to assure Rivera that they would not face any consequences if they kept their story cohesive. Defendant texted Rivera, "That's cool, cuz. We was all involved. We all take our chances." Rivera responded, "It was all your idea. I didn't even wanna to go there . . . . I didn't wanna have parts in this shit, period, and I didn't." She also stated, "You stole the tools [to] make yourself some money. You was doing that shit for yourself." Defendant retorted, "You pushed the cart, you handed me all the shit[,]" to which Rivera responded, "Right. You made me push the cart. I didn't know what I was doing. And, I pushed the cart because my daughter was in it."

Rivera also expressed concern she might face punishment for defendant's actions, saying, "You did it. It was your idea. Suffer the consequences." "I'm scared though . . . [b]ecause I got a feeling I'm going to jail." Defendant responded, "We ok. Just chill[]" and "Just relax." "[Y]ou can't break" and "You're going to fold if . . . you don't pull yourself together."

A-2898-17T4

The text messages meet the first two prongs of the Rule 803(b)(5) test: defendant's attempt to convince Rivera to maintain a cohesive story indicated it was at least plausible the two agreed to steal the tools. The security video provided independent corroboration for the existence of an alleged conspiracy. The security video shows defendant, Rivera and another woman pushing a cart and filling it with merchandise. Later, the women were seen standing by an empty cart. What the security footage shows is consistent with the text messages where Rivera admits she pushed the cart and defendant stole the tools. Viewing this evidence together, the judge did not abuse his discretion by admitting the text messages.

## II.

Because defendant did not move to sever his trial from Rivera's under Rule 3:15-2(c), we review his second argument under the plain error standard. R. 2:10-2. Plain error is an error "clearly capable of producing an unjust result." State v. Prall, 231 N.J. 567, 581 (2018) (quoting R. 2:10-2).

Rule 3:7-7 allows two or more defendants to be tried jointly "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." "When the crimes charged arise from the same series of acts, and when much of the same evidence

is needed to prosecute each defendant, a joint trial is preferable." State v. Brown, 118 N.J. 595, 605 (1990). "Joint trials foster an efficient judicial system, and spare witnesses and victims the inconvenience and trauma of testifying about the same events two or more times." State v. Sanchez, 143 N.J. 273, 282 (1996) (citations omitted).

Separate trials are necessary when the defendants' "defenses are antagonistic and mutually exclusive or irreconcilable." Brown, 118 N.J. at 605. "[T]he potential for prejudice inherent in the mere fact of joinder does not of itself encompass a sufficient threat to compel a separate trial." State v. Scioscia, 200 N.J. Super. 28, 42 (App. Div. 1985). "The test for granting severance, however, is a rigorous one." Brown, 118 N.J. at 605-06. Severance is appropriate "when a defendant's and a co-defendant's defenses are not simply at odds, but are 'antagonistic at their core,' meaning that they are mutually exclusive and the jury could believe only one of them." State v. Weaver, 219 N.J. 131, 149 (2014). "'Mutual exclusivity' demands that the jury's universe of choices be limited to two: the jury can believe only either one defendant or the other." Brown, 118 N.J. at 606 (emphasis in original).

In his opening statement, Rivera's lawyer told the jury that Rivera went to Home Depot with the intention of buying tools to fix up her home and asserted

there was no agreement to commit shoplifting. During summation, Rivera's counsel argued she was at Home Depot with defendant when he loaded tools into a cart and possibly tried to shoplift them. When she found out what was going on, she became frustrated and left.

Defendant argued he was innocent of assault, robbery and conspiracy but did not deny the attempted shoplifting. His lawyer argued, "[defendant] made a stupid decision . . . when he attempted to shoplift from Home Depot. And when he got caught attempting to shoplift, he fled, but he did not assault or rob [Ortiz]."

Defendant argues on appeal that Rivera's defense was antagonistic to his. We disagree. Rather, Rivera's defense was mutually beneficial to defendant. If the jury believed Rivera, it necessarily had to acquit defendant of the conspiracy charge. Moreover, whether the jury believed Rivera had no bearing on defendant's defense to the assault and robbery charges.

We recognize both defendants pointed fingers at each other during the trial, but we do not consider these "defenses that are antagonistic at their core." Ibid. (quoting United States v. Berkowitz, 662 F.2d 1127, 134 (5th Cir. 1981)). "The mere existence of hostility, conflict, or antagonism between defendants is not enough." Ibid. "The fact that one defendant seeks to escape conviction by

A-2898-17T4

placing guilt on his or her co-defendant has not been considered sufficient grounds for severance." Ibid.

### III.

When we review a sentence, we do not substitute our own judgment for that of the sentencing court. State v. Natale, 184 N.J. 458, 489 (2005). We limit our inquiry to whether the sentencing guidelines were followed, was there competent and credible evidence supporting the application of the guidelines, and whether the sentence shocks the judicial conscience. Ibid.

The sentencing judge found aggravating factors: three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, prior criminal record, N.J.S.A. 2C:44-1(a)(6); and nine, need for deterrence, N.J.S.A. 2C:44-1(a)(9). The judge found mitigating factor three, defendant acted under strong provocation, N.J.S.A. 2C:44-1(b)(3). With respect to mitigating factor three, the judge stated he was "going to give him the benefit of mitigating factor three, but I'm not weighing it heavily," as he did not find strong compulsion but thought the theft might have been to support defendant's drug habit. The sentencing court reviewed defendant's criminal history and noted he was a multi-state offender, though this case was defendant's first New Jersey conviction. Defendant was subject to an extended term sentence with a range of five-to-

11

twenty years.  We discern no error in the application of the guidelines and the sentence imposed does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION